IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | In Proceedings |
| | ) | Under Chapter 13 |
| BRANDON A. RITTER, | ) | |
| | ) | Bk. No. 22-40120 |
| Debtor. | ) | |

**OPINION**

The question before the Court is whether a secured creditor can object to the Debtor's Third Amended Chapter 13 Plan when that creditor withdrew its objection to a prior version of the Plan stating that treatment of its claim was sufficient, did not object to a subsequent version of the Plan with the same treatment, filed a proof of claim consistent with the Plan, and received substantial payments on that claim.

The relevant facts are not in dispute. The Debtor filed his Chapter 13 bankruptcy on April 14, 2022, listing Shellpoint Mortgage as his mortgage creditor on Schedule D. In his original Chapter 13 Plan, filed at 3:51 p.m. on April 14, 2022 (Doc. #2), the Debtor provided for treatment of the Shellpoint Mortgage claim in Section F - Real Estate Secured Claims to which 11 U.S.C. §506 Valuation is Applicable ("Cram Down Claims"). The Plan estimated the claim at $116,819.95 against a property value of $150,000.00, with an interest rate of 0.00% and an estimated monthly payment of $0.00. Six minutes later, at 3:57 p.m. on April 14, 2022, the Debtor filed a second Chapter 13 Plan, also designated as the original Plan (Doc. #6 – "Second Original Plan"), that provided for the Trustee to pay Shellpoint Mortgage the ongoing post-petition monthly payment estimated at $1,200.00 for the duration of the sixty (60) month Plan. The Second Original Plan also proposed to cure a pre-petition mortgage arrearage owed to Shellpoint Mortgage in the

estimated amount of $43,000.00, and a Limbo payment of $2,400.00.

On April 25, 2022, NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") filed an Objection to the first original Plan on the basis that the Plan proposed an interest rate of 0.00% rather than the contractual rate of 6.375%. Shellpoint asserted that "[p]ursuant to 11 U.S.C. §1322(b)(2), Debtor cannot cramdown Creditor's lien as it is secured on Debtor's principal residence and the promissory note and mortgage have not matured nor will they mature during the course of the Plan." On April 28, 2022, Shellpoint filed a Motion to Withdraw its Objection stating "[t]he Objection to Confirmation of Plan is being withdrawn because Debtor's second plan filed on April 14, 2022 at docket number 6 provides sufficient treatment as to Creditor." The Court granted Shellpoint's Motion to Withdraw by Order entered April 29, 2022.

Shellpoint then filed its Proof of Claim on June 21, 2022 as fully secured in the amount of $119,308.66, including in paragraph 9 "Amount necessary to cure any default as of the date of the petition: $35,247.86." Shellpoint also attached the original Note and Mortgage to the Proof of Claim along with an Escrow Account History. The Escrow Account History included anticipated payments to escrow for the remainder of 2022 and into 2023. On July 18, 2022, Shellpoint filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges with respect to its Proof of Claim setting forth fees of $2,125.00. Neither the Debtor nor the Chapter 13 Trustee filed an Objection to Shellpoint's Proof of Claim or its Notice of Postpetition Mortgage Fees, Expenses, and Charges, and Shellpoint has not withdrawn its Proof of Claim.

The Debtor filed his First Amended Plan on July 20, 2022 which mooted various objections to the Second Original Plan raised by the Trustee. The Debtor's First Amended Plan provided the same treatment for the Shellpoint mortgage, changing only the estimated monthly mortgage

payment from $1,200.00 to $763.72, the Limbo payment from $2,400.00 to $1,527.44, and the pre-petition delinquency from $43,000.00 to $35,247.86, corresponding to the figures in Shellpoint's Proof of Claim. The Debtor additionally provided for payment of Shellpoint's postpetition mortgage fees of $2,125.00 as set forth in Shellpoint's Notice of Postpetition Mortgage Fees, Expenses, and Charges. Shellpoint did not object to the First Amended Plan. The Trustee filed an Objection to the First Amended Plan citing discrepancies related to Schedule A/B and a typographical error in the Debtor's address, and on the basis that a co-signed debt with First National Bank of Kinmundy should not have been addressed in Paragraph 8 of the Plan. The Debtor mooted the Trustee's Objection by filing his Second Amended Plan on August 29, 2022. The only change in the Second Amended Plan was to correct the address of the mortgaged property and to move the treatment of the Kinmundy claim from Paragraph 8 to Paragraph 5.

Shellpoint then filed an Objection to the Second Amended Plan on the basis that it had already conducted a pre-petition Sheriff's sale on March 17, 2022 after a foreclosure in state court. According to Shellpoint, that sale terminated the Debtor's right to cure pursuant to 11 U.S.C. §1322(c)(1). The Trustee also filed an Objection to the Second Amended Plan on unrelated grounds. The Objections to the Second Amended Plan were mooted when the Debtor filed a Third Amended Plan on October 6, 2022. The Third Amended Plan did not change the treatment of the Shellpoint claim. The Trustee filed his Recommendation to Confirm the Third Amended Plan on October 11, 2022.

Shellpoint filed an Objection to the Third Amended Plan reasserting the argument made in its Objection to the Second Amended Plan that the Debtor's right to cure the mortgage delinquency was terminated when the property was sold at the pre-petition sheriff's sale. In his Response to

Shellpoint's Objection, the Debtor argued that Shellpoint had waived and was estopped from asserting an objection to the proposed plan treatment because it withdrew its Objection to the Debtor's original Plan, failed to object to the First Amended Plan, filed a proof of claim secured by the mortgage, and accepted payments from the Chapter 13 Trustee in excess of $9,000.00 which had been applied to monthly mortgage payments and mortgage arrearages. The parties reiterated their arguments at a hearing before the Court on December 9, 2022. At the hearing, the Trustee advised the Court that he had paid Shellpoint in excess of $10,000.00 on its secured claim at that point. Counsel for Shellpoint argued that because a foreclosure sale had been conducted prior to the bankruptcy filing, the Debtor no longer had a right to cure the mortgage. Debtor's counsel noted that the state court had not yet entered an order confirming the sale at the time of the bankruptcy filing. The parties declined the opportunity to present any evidence or additional authority in support of their positions.

The Court finds that Shellpoint's Objection to the Debtor's Third Amended Plan is barred by both the equitable doctrine of judicial estoppel and the provisions of the Bankruptcy Code. Bankruptcy courts are courts of equity which apply "the principles and rules of equity jurisprudence." *Pepper v. Litton*, 308 U.S. 295, 304 (1939). One such principle is the doctrine of judicial estoppel. The United States Supreme Court described its application in *New Hampshire v. Maine,* 532 U.S. 742 (2001). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine,* 532 U.S. at 749, quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). While noting that it did not intend to

"establish inflexible prerequisites or an exhaustive formula", the Court found that three factors "typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. at 750. "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* Next, "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *Id.* Finally, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Applying the *New Hampshire v. Maine* factors in a bankruptcy context, the Seventh Circuit Court of Appeals emphasized that "[j]udicial estoppel is a matter of equitable judgment and discretion." *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012).

Here, the facts support the application of judicial estoppel. As to the first factor, the assertion of inconsistent positions, Shellpoint withdrew its Objection to the Debtor's original Plan stating specifically that "[t]he Objection to Confirmation of Plan is being withdrawn because Debtor's second plan filed on April 14, 2022 at docket number 6 provides sufficient treatment as to Creditor." The basis of that previous Objection was that Shellpoint's lien is "secured on Debtor's principal residence and the promissory note and mortgage have not matured nor will they mature during the course of the Plan." Further, Shellpoint filed a secured Proof of Claim with the Court stating in paragraph 9 - "Amount necessary to cure any default as of the date of the petition: $35,247.86." When the Debtor later amended his Plan to conform with the amounts set forth in the Proof of Claim, Shellpoint filed no objection, nor did Shellpoint withdraw its Proof of Claim. Now, months later, Shellpoint objects to the same Plan treatment it previously found "sufficient"

5

and asserts that the Debtor cannot cure the very mortgage default that its Proof of Claim stated could be cured by payment of $35,247.86.

The second factor for examination, acceptance of the prior position, favors judicial estoppel as well. The Court, having reviewed Shellpoint's Motion to Withdraw its initial Objection to the Debtor's Plan, granted that Motion on April 29, 2022 finding "good cause to grant the requested relief." The Debtor thereafter continued to make payments to the Chapter 13 Trustee according to the terms of the Plan. The Trustee, in turn, continued to make payments to Shellpoint as provided for in the Debtor's Plan and Shellpoint's Proof of Claim, and Shellpoint continued to accept those payments.

Finally, the Court looks to whether Shellpoint would gain an unfair advantage or impose an unfair detriment if not estoped from asserting a new position. According to the Chapter 13 Trustee, Shellpoint has received more than $10,000.00 in payments from the Debtor over the course of this case. Those payment have been made pursuant to a Chapter 13 Plan that the Debtor previously amended to conform to Shellpoint's own Proof of Claim and Notice of Postpetition Mortgage Fees, Charges and Expenses.

At the hearing on its Objection, counsel for Shellpoint argued that not only should Shellpoint prevail on its Objection, but that Shellpoint should also be entitled to retain the payments it has received from the Debtor to date. The Debtor's Plan does not provide for payment to unsecured creditors and counsel for Shellpoint has provided no basis for his assertion that Shellpoint should be allowed to retain the payments and apply them to an unsecured mortgage deficiency. Such treatment would entitle Shellpoint to an unfair advantage over other creditors and impose an unfair detriment to the Debtor who has made significant postpetition payments to

Shellpoint toward its mortgage arrearage and the ongoing mortgage principal and interest.

Sections 1325 and 1323 of the Bankruptcy Code also preclude Shellpoint from asserting an objection to the Debtor's Third Amended Plan because Shellpoint has already "accepted" the Debtor's Chapter 13 Plan. Section 1325(a)(5)(A) provides, "with respect to each allowed secured claim provided for by the plan," the Court shall confirm the plan if "the holder of such claim has accepted the plan." 11 U.S.C. §1325(a)(5)(A). Courts have disagreed about whether a creditor's silence, or failure to object to a plan, may be deemed an "acceptance" of the plan. *See In re Flynn,* 402 B.R. 437, 443-444 (1st Cir. BAP 2009); *Wachovia Dealer Servs. v. Jones (In re Jones)*, 530 F.3d 1284, 1291 (10th Cir. 2008) (failure to object deemed acceptance); *Cf. In re Shelton*, 592 B.R. 193, 204-213 (Bankr. N.D. Ill. 2018) (surveying case law and requiring actual acceptance). However, no such uncertainty exists in this case. Here, Shellpoint objected to the Debtor's original Chapter 13 Plan, but then withdrew that Objection stating specifically that "[t]he Objection to Confirmation of Plan is being withdrawn because Debtor's second plan filed on April 14, 2022 at docket number 6 provides sufficient treatment as to Creditor." By withdrawing its Objection and declaring the plan treatment "sufficient", Shellpoint took affirmative action to "accept" the Second Original Plan.

Once Shellpoint accepted the Second Original Plan, it could not object to a later version of the Plan which did not change its rights. Section 1323 - "Modification of plan before confirmation" provides:

> Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.   11 U.S.C. §1323(c).

The Debtor's subsequent amended plans did not change Shellpoint's rights. After Shellpoint accepted the Debtor's Second Original Plan, the Debtor filed his First Amended Plan to moot objections raised by the Trustee. The Debtor's First Amended Plan provided the same treatment for the Shellpoint mortgage, changing only the estimated monthly mortgage payment and pre-petition delinquency to correspond to the figures set forth in Shellpoint's Proof of Claim, and adding a provision to pay Shellpoint's postpetition mortgage fees as set forth in Shellpoint's Notice of Postpetition Mortgage Fees, Expenses, and Charges. Shellpoint did not object to that First Amended Plan. Only later, when the Debtor filed his Second Amended Plan and then Third Amended Plan to cure minor objections by the Trustee, did Shellpoint file its Objection raising the foreclosure issue. At that time, however, Shellpoint had already accepted the Debtor's treatment of its claim and was precluded by §§ 1325(a)(5)(A) and 1323(c) from objecting to that treatment.

This Court's decision is not intended to interpret or apply Illinois foreclosure law, nor does the Court render an opinion as to the validity of Shellpoint's foreclosure sale or whether the Debtor has any remaining right of redemption under Illinois foreclosure law.[1] Those are matters for the state court. The Court's decision is only that Shellpoint is precluded from objecting to the Debtor's Third Amended Plan. Should the Debtor fail to complete his Plan, Shellpoint can pursue its remedies in state court according to the terms of its contract and applicable state law.

---

[1] This Court does not have facts before it to determine whether the Debtor still had statutory redemption rights, including a "special right of redemption", under Illinois law when he filed his bankruptcy, or whether any statutory infirmities exist that would void the foreclosure sale. In this case, Shellpoint never filed a motion for relief from the automatic stay to return to state court to confirm the foreclosure sale. In that regard, the Court contrasts this case to *Colon v. Option One Mortgage Corp.*, 319 F.3d 912 (7th Cir. 2003) where the Seventh Circuit Court of Appeals affirmed a bankruptcy court's decision to grant a creditor relief from stay to return to state court to confirm its foreclosure sale. The Seventh Circuit explained that the state court could address any statutory infirmities relating to the foreclosure sale at the confirmation hearing and reasoned that "[i]f the sale is void, she [the debtor] will have the rights under the Code and state law of a debtor whose property has not yet undergone a judicial sale." *Id.* at 921.

Accordingly, Shellpoint's Objection to the Debtor's Third Amended Plan is Overruled and the Plan is confirmed.

See Separate Order entered this date.

ENTERED: February 2, 2023

/s/ William V. Altenberger
_____
UNITED STATES BANKRUPTCY JUDGE